UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HEYTAP PTE. LTD f/k/a BRAVO UNICORN PTE. LTD, <br><br> Plaintiff, <br><br> v. <br><br> X CORP. f/k/a TWITTER, INC., <br><br> Defendants. | Civil Action File No. <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff HeyTap PTE. LTD f/k/a Bravo Unicorn PTE. LTD ("**Plaintiff**") by and through its undersigned counsel, files this Complaint against Defendant X Corp. f/k/a Twitter, Inc. ("**Defendant**"), as follows.

## THE PARTIES

1. Plaintiff HeyTap PTE. LTD f/k/a Bravo Unicorn PTE. LTD is a corporation organized and existing under the laws of Singapore with its principal place of business at 9 Raffles Place, #26-01 Republic Plaza, Singapore, 48619.

2. Defendant X Corp. f/k/a Twitter, Inc. is a Delaware Corporation with its principal place of business at 865 FM 1209, Building 2, Bastrop, Texas 78602.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because complete diversity exists between Plaintiff and Defendant and the amount in controversy exceeds $75,000.00.

4. This Court has personal jurisdiction over Defendant pursuant to Section 13(i) of the Twitter Application Distribution Agreement with an effective date of November 24, 2020 (the "**2020 Agreement**"), Section 13(i) of the Twitter Application Distribution Agreement with an

effective date of February 10, 2021 (the "**February 2021 Agreement**"), and Section 13(i) of the Twitter Application Distribution Agreement with an effective date of April 1, 2021 (the "**April 2021 Agreement**") (collectively, the "**Agreements**"), which were all executed between the parties.

5. Under the terms of the Agreements, "the Parties consent to personal jurisdiction in, and the exclusive venue of, the courts of New York, New York."

6. Venue in this District is proper pursuant to 28 U.S.C. § 1391, and Section 13(i) of the Agreements.

## FACTUAL ALLEGATIONS

7. Defendant owned and operated Twitter, a social media platform available through an application on smartphones and other devices.

8. On or about October 27, 2022, Elon Musk purchased Defendant for approximately $44 billion.

9. On or about July 23, 2023, Defendant was branded as X Corp., and the social media platform Twitter was rebranded as X.

10. Plaintiff is a global provider of comprehensive Internet-based services with a range of products on the market, including an App Market, Game Center and Browser.

11. On or about November 24, 2020, Plaintiff and Defendant executed the 2020 Agreement.

12. On or about February 10, 2021, Plaintiff and Defendant executed the February 2021 Agreement.

13. On or about April 1, 2021, Plaintiff and Defendant executed the April 2021 Agreement.

14. Notably, the Agreements are essentially identical documents with minor differences in the fee schedules, the locations covered by each respective Agreement, and a different timeframe for each of the Agreements.

15. Pursuant to the Agreements, Plaintiff agreed to pre-install the Twitter application, now X, on certain smartphones manufactured and/or distributed by or on behalf of Plaintiff.

16. Defendant agreed to pay Plaintiff a set amount for each smartphone on which Plaintiff preloaded the Twitter application.

17. Pursuant to the 2020 Agreement, Defendant agreed to pay Plaintiff $0.40 per smartphone on which Plaintiff preloaded the Twitter application, so long as the smartphone was available for purchase by an end user/member of the general public in the United Kingdom and European Union.

18. Pursuant to the February 2021 Agreement, Defendant sought to expand the services Plaintiff provided and agreed to pay Plaintiff $0.15 per smartphone on which Plaintiff preloaded the Twitter application, so long as the smartphone was available for purchase by an end user/member of the general public in the Philippines and $0.10 for each smartphone available for purchase in Indonesia.

19. Pursuant to the April 2021 Agreement, Defendant again sought to expand Plaintiff's services and agreed to pay Plaintiff $0.25 per smartphone on which Plaintiff preloaded the Twitter application, so long as the smartphone was available for purchase by an end user/member of the general public in the United Kingdom and European Union, $0.10 for each smartphone available for purchase in Indonesia, $0.15 for each smartphone available for purchase in Thailand, and $0.15 for each smartphone available for purchase in Malaysia.

20. Pursuant to the Agreements, Defendant was required to "pay each invoice for undisputed fees … within sixty (60)) (sic) days of receipt."

21. From on or about November 2020 to on or about February 2023, Plaintiff compiled with its obligations under the Agreements by preloading the Twitter application on smartphones manufactured and/or distributed by or on behalf of Plaintiff and made those smartphones available for purchase by the public.

22. Plaintiff timely submitted invoices to Defendant for payment pursuant to the Agreements and Defendant timely paid its invoices through July 2022.

23. Despite timely submission of invoices by Plaintiff, however, beginning in October 2022, Defendant failed to pay ten (10) invoices (the "**Invoices**").

24. As a result, the total amount Defendant owes Plaintiff pursuant to the Invoices is $968.363.65.

25. Defendant did not dispute the amounts billed on the Invoices at the time they were submitted to Defendant or anytime thereafter.

26. To date, Defendant has failed to remit payment to Plaintiff for work Plaintiff performed and timely billed to Defendant pursuant to the Agreements, as evidenced in the Invoices.

## COUNT I
### Breach of Contract

27. Plaintiff repeats, realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

28. The Agreements are valid, binding, and enforceable contracts.

29. Plaintiff performed under the Agreements by preloading the Twitter application on smartphones manufactured and/or distributed by or on behalf of Plaintiff and made those smartphones available for purchase by end users, among other things.

30. Defendant breached its obligation under the Agreements by failing to pay Plaintiff within sixty (60) days of receiving the Invoices for services rendered by Plaintiff pursuant to the Agreements.

31. As a direct, proximate, and foreseeable result of Defendant's breach of the Agreements, Plaintiff has suffered damages in an amount to be proven at trial, but not less than $968.363.65 together with pre and post judgment interest, costs and such other relief as the Court deems just and proper.

## COUNT II
### Unjust Enrichment

32. Plaintiff repeats, realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

33. This claim is pleaded in the alternative to Count I – Breach of Contract.

34. Plaintiff provided services to Defendant pursuant to the Agreements.

35. Specifically, Plaintiff preloaded the Twitter application on smartphones manufactured and/or distributed by or on behalf of Plaintiff and made such smartphones available for purchase by end users.

36. Defendant benefited from Plaintiff's preloading of the Twitter application on smartphones.

37. Defendant did not fully and completely compensate Plaintiff for the benefits it received by way of Plaintiff's actions.

38. By virtue of the foregoing, Defendant has been unjustly enriched at the expense of Plaintiff by way of Defendant's unlawful, inequitable, and wrongful conduct.

39. It would be unjust and unconscionable for Defendant to retain those benefits without fully and fairly compensating Plaintiff for its time, efforts, and services.

40. As a direct, proximate, and foreseeable result of Defendant's breach of the Agreement, Plaintiff has suffered damages in an amount to be proven at trial, but not less than $968.363.65, together with pre and post judgment interest, costs and such other relief as the Court deems just and proper.

## COUNT III
### Account Stated

41. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

42. In the regular course of dealing between the parties, Plaintiff rendered the Invoices to Defendant for amounts due and owing under the parties' Agreements.

43. Plaintiff transmitted those Invoices to Defendant, including Invoices totaling $968,363.65, which accurately reflected the amounts due and owing for services performed and obligations incurred by Plaintiff.

44. Defendant received and retained the Invoices without objection within a reasonable time or anytime thereafter.

45. Defendant has never disputed the accuracy of the Invoices, the services reflected therein or the amounts stated as due and owing.

46. By retaining the Invoices without objection, Defendant assented to the correctness of the stated balances and acknowledged its obligation to pay Plaintiff the amounts set forth therein.

47. Despite due demand, Defendant failed and refused to pay the Invoiced amounts.

48. As a result of Defendant's failure to pay the account stated, Plaintiff has been damaged in an amount no less than $968,363.65, together with pre and post-judgment interest, costs and such other relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief against Defendant as follows:

(a) An award of compensatory damages to Plaintiff against Defendant in an amount not less than $968,363.65, inclusive of pre- and post-judgment interest; and

(b) For such other relief as the Court deems appropriate.

Dated:  February 5, 2026
        New York, New York

Respectfully submitted,

STEVENS & LEE, P.C.

*Catherine Pastrikos Kelly*
Catherine Pastrikos Kelly, Esq. (CP3300)
485 Madison Ave., 20th Floor
New York, NY 10022
(212) 537-0417
Catherine.kelly@stevenslee.com

*Attorneys for Plaintiff*
*HeyTap PTE. LTD f/k/a*
*Bravo Unicorn PTE. LTD*

7